UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MALCOM WILSON,

    Plaintiff,

    v.

CASTANEDA,

    Defendant.

CAUSE NO. 3:22-CV-822-JD-MGG

OPINION AND ORDER

Malcom Wilson, a prisoner without a lawyer, filed a motion to reconsider the court's order dismissing his complaint for failure to state a claim. ECF 6. Because it was filed within 28 days of dismissal, it is construed as a motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006).

Before the motion to reconsider was ruled on, Wilson filed a notice of appeal. ECF 7. Once a notice of appeal is filed, district courts are generally divested of jurisdiction. *Hughes v. Farris*, 809 F.3d 330, 333 (7th Cir. 2015); *Ameritech Corp. v. Intl. Broth. of Elec. Workers, Loc. 21*, 543 F.3d 414, 418 (7th Cir. 2008). However, district courts possess "limited authority" to rule on certain post-judgment motions during the pendency of an appeal. *Ameritech Corp.*, 543 F.3d at 418–19; *see also* Fed. R. Civ. P. 62.1(a)

("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.").

Wilson alleges his Fourteenth Amendment due process rights were violated by the imposition of a restitution sanction of "up to $100,000 dollars" for medical costs associated with an altercation he had with another inmate. The court dismissed his complaint, finding that the factual allegations and attached documents Wilson had provided showed he was afforded adequate due process in connection with the sanction.[1] *See* ECF 3 at 2–5; *see also Campbell v. Miller*, 787 F.2d 217, 224 n.12 (7th Cir. 1986) ("It is obvious that a *Wolff*-hearing, as was conducted in Campbell's case, if sufficient for the revocation of good-time credits, must be so for the entry of the restitution and impoundment orders."); *but cf. Tonn v. Dittmann*, 607 Fed. Appx. 589 (7th Cir. 2015) (dismissal of inmate's due process claim was vacated because he "adequately alleged that the restitution order was not supported by *any* evidence") (emphasis added).

In his motion, Wilson claims that the Indiana Department of Correction didn't incur any costs in connection with the other inmate's injuries and that he sought

---

[1] Specifically, both the video recording report and the conduct report provided "some evidence" in the record to support the restitution sanction. ECF 3 at 4–5.

2

evidence of the bill but was told there was none.² ECF 6 at 2. Thus, he asserts, because no evidence of a bill was provided to him at the hearing, he has stated a plausible due process claim. In doing so, he relies heavily on *Tonn*, which he insists establishes that "evidence of a bill is absolutely necessary to support a restitution order." ECF 6 at 1.

Wilson's reading of *Tonn*, an unpublished case, is too broad. As set forth in detail in the court's dismissal order, Wilson submitted various documents with his complaint including a conduct report, a report of disciplinary hearing video evidence, and the report of disciplinary hearing itself that, together, establish Wilson was afforded due process.³ Specifically, the court found:

> Wilson doesn't dispute he received advance notice and had a disciplinary hearing on the battery charge that led to the restitution order. He had an opportunity to defend himself by giving a statement to the hearing officer and requesting that physical evidence (namely, a video recording) be reviewed. The fact-finder rendered a guilty decision via written statement and included the reasons for it. Wilson disputes the conclusion he committed battery and complains there was "no evidence" to serve as the basis for the restitution sanction. However, the video recording report states Wilson attempted to grab a cane from an offender, a struggle ensued, and the offender fell to the floor. That offender was later seen "doubled over in pain." The conduct report further notes he pushed the offender who was sent to an "outside hospital for his injuries." Transporting an inmate to an outside hospital—an effort not plausibly untaken taken (sic) for minor injuries—undoubtedly incurs costs. Thus, there was some evidence in the record to support the restitution sanction.

---

² In the documents attached to his complaint, Wilson simply asserted he was "sanctioned ($100,000) without ever being shown a supposed bill to account for the restitution." ECF 1-1 at 9.

³ The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court [determines] the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted).

ECF 3 at 4–5.

To satisfy due process, before an inmate is deprived of a protected interest, there must be "some evidence" in the record to support the deprivation. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–73 (1974). As emphasized in *Campbell*, "routine matters of prison discipline"—including restitution sanctions—are not akin to formal criminal or civil proceedings, and prisoners are not afforded a "full panoply of rights." *Campbell*, 787 F.2d at 224. This is because "[s]uch an intrusion on the administration and enforcement of a federal penitentiary's disciplinary regulations is unwarranted and ill-advised." *Id*. Citing to *Wolff*, the *Campbell* court recognized:

> Prison disciplinary proceedings . . . take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. . ... They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. . ... Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace.
>
> It is against this background that disciplinary proceedings must be structured by prison authorities; and it is against this background that we must make our constitutional judgments.
>
> [T]here would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the criminal trial, very likely raise the level of confrontation between staff and inmate, and make more difficult the utilization of the disciplinary process as a tool to advance the rehabilitative goals of the institution.

*Id.* (citing *Wolff*, 418 U.S. at 561–63).

4

Here, Wilson claims he was not afforded due process when he was sanctioned with restitution because there was no evidence of a bill during the disciplinary process. He insists the court "unfairly construed the allegations in the complaint against him" because the hospital trip "may have never happened." ECF 6 at 2–3. However, as noted above, the documents attached to the complaint—which were submitted and reviewed by the officer at the disciplinary hearing—indicate the offender "was" later sent to an outside hospital for his injuries, not that he may have been as Wilson speculates. This provides some evidence of costs associated with the incident and comports with due process. *See Wolff*, 418 U.S. at 563–73; *Hill*, 472 U.S. at 455. Despite Wilson's arguments otherwise, being *shown* a bill is not required. *See Tonn*, 607 Fed. Appx. at 590 (recognizing a distinction between a claim "asserting a right to *see* the evidence of costs," which does not necessarily implicate due process, and a claim that a "hearing was devoid of [any] such evidence," which can trigger due process concerns) (emphasis in original). Thus, in this particular case, the lack of availability of a bill is not a sufficient basis for reconsideration under Rule 59(e). *See Campbell*, 787 F.2d at 225 (when it has been determined an inmate challenging a restitution sanction "was afforded procedural due process consonant with the circumstances of his incarceration" pursuant to a disciplinary hearing related to that charge, he has not stated a valid Fourteenth Amendment claim).[4]

---

[4] Of note, the Indiana Department of Correction Policy and Administrative Procedure Disciplinary Code for Adult Offenders, number 02-04-101 § IX(E)(3), provides that restitution may be

5

Moreover, *Tonn* is distinguishable from the instant case. In *Tonn*, the plaintiff was found guilty of "misuse of prescription medication" because medication that had not been prescribed to him was found in his possession. *Tonn*, 607 Fed. Appx. at 590. He was sanctioned with ninety days of disciplinary segregation and the imposition of $1,350 in restitution. In his complaint, Tonn stated that the disciplinary committee ordered him to pay restitution "to compensate the institution for lost funds because of *other* inmate's DSH trips." *See Tonn v. Meisner*, cause no. 3:14-CV-481-jdp (West. Dist. of Wis. July 2, 2014) (complaint, ECF 1 at 3) (emphasis added).[5] Thus, Tonn alleged, the committee inappropriately relied on the costs attributed to others but had no evidence

---

imposed as a sanction for a disciplinary offense. With regard to restitution for medical expenses, footnote five of that section states:

> If it is not possible to determine the amount of medical restitution at the time of hearing due to ongoing medical treatment or a delay in receiving the medical bills, the Disciplinary Hearing Officer may assess a medical expense restitution sanction up to an estimated amount. . . . [A] Disciplinary Hearing Officer is encouraged to use his or her own judgment and experience to determine the appropriate amount of an estimate. . . .

*Id*. As to the extraction of funds from a prisoner's account, that same footnote explains:

> [A] Disciplinary Hearing Officer shall make certain that appropriate facility personnel are aware of an ongoing medical restitution sanction, and that a hold is placed upon the offender's trust account if appropriate. A facility Warden or designee shall make certain that appropriate facility personnel track medical bills from a given event, and that the bills are accounted for and assessed against the subject offender and that the offender is appropriately notified when monies are withdrawn from the offender's trust account for purposes of payment of a medical restitution sanction.

*Id*. In his complaint, Wilson is not claiming that the defendants overcharged his prisoner trust account, that the hold should now be removed because the debt has been paid, or even that any money has actually been deducted. Rather, his complaint is based on his belief that the prison officials may not impose restitution against him because "[t]here was no evidence of any medical bills or any other bills" provided during the disciplinary hearing process to establish the exact amount of restitution. ECF 1 at 3.

[5] *See also Tonn v. Meisner*, 669 Fed. Appx. 800, 801 (7th Cir. 2016) ("*Tonn II*") (noting that "the restitution amount was based on the costs of other inmates' trips to the hospital under similar circumstances.").

6

of any costs associated with his own infraction. *See id*. (complaint, ECF 1 at 4) ("[T]he only evidence relied on and submitted at the hearing and in the committee's decision was a written statement of the advocate void of any proof of a[n] institution loss and five (5) pages of medication information void of any proof of a[n] institution loss."). Of note, Tonn's complaint did not include any attachments from the disciplinary committee hearing or any other documentary evidence.

Here, in contrast, Wilson attached the various documents described above, which the court considered when determining the sufficiency of his claims. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). In doing so, Wilson essentially pled himself out of court. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (plaintiff can plead himself out of court if he pleads facts that preclude relief); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (same). Accordingly, this case is analogous to *Campbell*, the most relevant reported Seventh Circuit case on the issue, in which the inmate challenged his sanction for destroying property, but the Court of Appeals found that "[b]ecause he received an opportunity, under federal prison regulations, to rebut the charges against him, we hold that Campbell was afforded procedural due process consonant with the circumstances of his incarceration." *Campbell*, 787 F.2d at 225; *see also Singh v. Gegare*, 651 Fed. Appx. 551, 555–56 (7th Cir. 2016) ("He does not deny that he had notice of the charges against him, that he received a hearing in each instance, and had an opportunity to defend himself. We conclude that there was no denial of due process.").

For these reasons, the court DENIES the motion to reconsider (ECF 6) pursuant to Fed. R. Civ. P. 62.1(a)(2).

SO ORDERED on April 12, 2023

/s/ Jon E. DeGuilio
CHIEF JUDGE
UNITED STATES DISTRICT COURT